# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No.: 2:13-cr-00140-SLB-JEO |
| ) | |
| BILLY WILLIAMS, JR., ) | |
|    also known as ) | |
|      "*Champ*" ) | |

## GOVERNMENT'S REPLY TO DEFENSE BRIEF
## ON MOTION TO SUPPRESS

COMES NOW the United States of America, by and through its counsel, Joyce White Vance, United States Attorney for the Northern District of Alabama, and Assistant United States Attorney Gregory R. Dimler, and responds to the defense brief (Doc. 113) on motion to suppress evidence seized from Unit 1204, City Federal Condominiums building, in Birmingham, Alabama.

### RELEVANT FACTS

On April 25, 2013, the defendant, Billy Williams, Jr., along with nine others, was indicted in a forty-one count indictment for his involvement in an ongoing drug trafficking conspiracy involving heroin and cocaine from about May 2012 to April 2013. Shortly after return of the indictment, FBI agents obtained arrest warrants for Williams and the other indicted defendants.

Beginning in October 2012, over the course of approximately four months,

1

FBI agents obtained judicial authorization to intercept the wire communications of Williams over multiple telephones.  Through interception of wire communications, agents confirmed information they had received earlier that Williams was at the center of a heroin and cocaine trafficking network operating in the greater Birmingham, Alabama area.  Intercepted communications assisted agents in identifying numerous members of Williams' drug trafficking organization, their respective roles, and locations used by Williams and others in this enterprise.

Among the locations that became important in the investigation was Unit 1204 at the City Federal Condominiums in downtown Birmingham.  Through investigation, agents learned that Williams leased this unit and regularly stayed there.  On May 15, 2013, Special Agent M. Wayne Gerhardt with the FBI applied for and obtained a search warrant for this unit.[1]  In the early morning hours of May 21, 2013, FBI agents executed an arrest warrant for Williams, who had slept at Unit 1204 at City Federal Condominiums the night before.  After knocking and announcing their presence, agents could hear movement within the apartment.  Accordingly, they breached the door.  Inside, agents located Williams emerging from the back bedroom of the condominium at which time he was immediately

---

[1] Copies of each search warrant executed in this case were provided to defense counsel in discovery.  These copies contained redactions of the identity of cooperating defendants in the case, who were specifically named in the affidavit.  The Government will provide the Court with unredacted copies of the search warrants, applications, and affidavits for review.

placed under arrest. In clearing the bedroom and attached bathroom, officers discovered an open window in the bathroom and an amount of cash on the outside window ledge with some money still falling to the ground. Concluding that Williams had been throwing cash out the window in an effort to conceal it, agents ran to the grounds outside the building where they collected approximately $60,000 in both loose and bundled cash. After Williams was taken into custody and a female occupant detained, agents executed the search warrant on the apartment. Numerous items of evidentiary value were recovered, including approximately $166,000 in cash, a money counter, Food Saver vacuum seal machine and accompanying bags, relevant documentary evidence, significant jewelry and other valuables, and over 15 cellular telephones. Challenging the sufficiency of the search warrant, Williams now seeks to suppress this evidence.

**I.      The Search Warrant is Supported by Probable Cause and Is Not Stale**

Williams seeks suppression of all evidence obtained during the search of Unit 1204, City Federal Condominiums, for the following reasons: (1) the affidavit contains conclusory statements unsupported by facts; (2) there is an insufficient connection between Williams, the residence, and the criminal activity; (3) the probable cause was stale. Williams is wrong for the reasons that follow.

A. <u>The affidavit contained probable cause supported by specific facts</u>

Williams argues that the affidavit does not contain probable cause, but merely unsupported conclusory statements. In so arguing, he isolates a number of statements within the affidavit arguing that they lack specificity upon which a magistrate could rely in determining probable cause. Williams cites a statement on page 7 of the affidavit which states that Williams was involved in trafficking heroin and cocaine. When viewed in isolation, Williams has a point. But that is not the task of the court in reviewing an affidavit for probable cause. Instead, courts are directed to make a practical common sense decision of whether, *given all the circumstances set forth in the affidavit*, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 273 (1983); *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002); *United States v. Jiminez*, 224 F.3d 1243, 1247 (11th Cir. 2000); (the affidavit should establish a nexus between the defendant, the place to be searched, and any criminal activity). Here, the statement that Williams was involved in heroin and cocaine trafficking is buttressed by specifically quoted intercepted telephone calls between Williams and his co-defendant, Sammuel Gulley, wherein the men discuss the specifics of picking up a load of heroin. (Affidavit at 17-21.) The affidavit also goes on to explain how two kilograms of

heroin were thereafter seized from Gulley and another kilogram and a half of cocaine from a "stash" location used by the men. (Affidavit at 20-21.) Thus, the statement that Williams was involved in heroin and cocaine trafficking, when viewed in light of the affidavit as a whole is not merely conclusory, but rather, based upon specific facts articulated within the four corners of the affidavit.

In a similar manner, Williams argues that a number of other statements within the affidavit are conclusory. For example, he claims that the affidavit contained an unsupported statement that he drove vehicles not registered to him and parked them at the condominium parking deck. But that is not true. The affidavit specifically lists the vehicles' tag numbers and registration and spells out that the affiant himself saw Williams operating these vehicles and saw them in the condominium parking deck. (Affidavit at 8-9.) Next, Williams claims that a statement about intercepted telephone calls referencing his presence at the condominium unit were conclusory. Again, Williams isolates this statement without reading the statement in context. The affidavit immediately goes on to detail a specifically numbered intercepted telephone call wherein Williams and Gulley discuss "the parking deck" and a later intercepted call referencing "six," the floor on which the parking deck is located. (Affidavit at 11-13.)

Williams is equally wrong that the affidavit contained no nexus between

him, the place to be searched, and the criminal activity. The affidavit established that Williams lived in unit 1204 of the City Federal Condominiums. He was seen there. (Affidavit at 10-11.) He himself signed the lease. (Affidavit at 10, 14.) His cars were seen parked in the parking deck. (Affidavit at 8-10.) He discussed being there in intercepted telephone calls. (Affidavit at 11-12, 15-16.) Cellular telephone towers put him in the vicinity of the condo. (Affidavit at 12, 13.)

      The affidavit also set forth probable cause to believe that evidence of Williams' involvement in a drug trafficking conspiracy would be found there. The affidavit listed the types of evidence that in the affiant's education, training and experience are routinely found in drug trafficking cases, including documentary evidence such as drug ledgers and telephone and address lists. (Affidavit at 2-5.) The affidavit also detailed an intercepted telephone call wherein Williams, who based on cell tower information was in the vicinity of the City Federal building, stated that he retrieved one of his old cellular telephones to contact co-defendant Walter Johnson, demonstrating that there was probable cause to believe that he stored old cellular telephones at that location. (Affidavit at 14.) The affidavit also established that Williams met with Dnitris Ferguson and Sammuel Gulley, two of Williams' couriers, at the condo. (Affidavit at 12-15.)

B.     The probable cause in the search warrant was not stale

In his motion, Williams claims that the information contained in the search warrant was stale and "the facts were not sufficient to justify a conclusion that drugs would probably be found at the location to be searched." (Doc. 113 at 3.) While Williams is correct that search warrants for drugs require a heightened standard of recency, the warrant at issue did not direct agents to search for drugs. (See Attachment II.) Instead, the search warrant application specified, among other things, records of financial transactions, ledgers, address and/or telephone books, currency, safes, and cellular telephones.

There is no prohibition on dated information so long as that information is updated, substantiated, or corroborated by facts within the Government's affidavit. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000) (quoting *United States v. Magluta*, 198 F.3d 1265, 1272 (11th Cir. 1999)). There is no talismanic rule that establishes arbitrary time limitations for presenting information to a magistrate, rather, each case is reviewed based upon the unique facts presented. *United States v. Harris*, 20 F.3d 445 (11th Cir. 1994) (holding that information that was more than two years old was not stale where the affidavit described a long-term complex money laundering and drug distribution conspiracy.)

In this case, the bulk of the information contained in the affidavit dated within six months of its signing. The most recent events discussed in the affidavit dated to late January of 2013, some four months earlier. Like the affidavit in *Harris*, the affidavit in this case described a long-term and ongoing drug trafficking enterprise headed by Williams establishing probable cause to believe that cash, documents, and cellular telephones used in the operation would be found there. The ongoing and continuous nature of the drug activities made it probable that these items would be found there.

## II.   The Search Warrant was Executed in Good Faith

Williams asks the Court to suppress any evidence obtained as a result of the search under the exclusionary rule. While the Government disagrees with Williams' characterization that the affidavit lacks probable cause, should the Court agree, suppression is not the answer. In *United States v. Leon*, the Supreme Court held "that the exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause." *United States v. Herring*, 492 F.3d 1212, 1215 (11th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897, 922(1984)). The Court reached its conclusion finding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a

subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 920-22.  It is because of those substantial costs – *i.e.*, the costly toll upon the truth-seeking functions of judge and jury – that "suppression of evidence has always been a last resort, not a first impulse." *Herring*, 492 F.3d at 1217 (citing *Hudson v. Michigan*, 547 U.S. 586, 590 (2006)).

Suppression is required "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Martin.* at 1313 (quoting *Leon*, 468 U.S. at 926).  The good-faith exception is inapplicable in only four limited sets of circumstances.  *Id.*  For good-faith to apply, the government must show that the officers reasonably relied on the search warrant.  This requires considering, "whether a reasonably well-trained officer would know that the warrant was illegal despite the magistrate's authorization."  *Id.* at 1314 (quoting *Leon*, 468 U.S. at 922).

The good faith exception, as outlined in *Leon* and applied in the Eleventh Circuit, extends to this search.  Williams does not argue that there are circumstances that make the exception inapplicable here.  Further, the affiant explained in detail how drug traffickers often maintain records relating to drug activities in their residence to keep track of amounts paid and owed.  The warrant

9

was targeted at ledgers, address and/or telephone books, currency, safes, cellular telephones, and other objects associated with drug trafficking.  There is nothing from the four corners of the warrant which would have caused executing officers to believe that the warrant was invalid on its face.

## CONCLUSION

For the foregoing reasons, Williams' motion to suppress should be denied. Since Williams merely argues that the warrant itself lacks probable cause, there is no need for an evidentiary hearing on this motion.  See *Franks v. Delaware*, 438 U.S. 154 (1978).

RESPECTFULLY submitted this the 12th day of July, 2013.

                                                JOYCE WHITE VANCE
                                                United States Attorney

                                                //s//
                                                GREGORY R. DIMLER
                                                Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

      This is to certify that on this the 12th day of July, 2013, the foregoing was served upon counsel for the defendant according to local rules and by means of the Electronic Filing and Case Management System (CM/ECF) of the United States District Court for the Northern District of Alabama to the following recipient:

      David S. Luker


      //s//
      GREGORY R. DIMLER
      Assistant United States Attorney